Randall A. Peterman, ISB No. 1944
Melodie A. McQuade, ISB No. 9433
GIVENS PURSLEY LLP
601 West Bannock Street
Post Office Box 2720
Boise, Idaho  83701
Telephone  (208) 388-1200
Facsimile  (208) 388-1300
rap@givenspursley.com
melodiemcquade@givenspursley.com
014668-0002

Attorneys for Defendant

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>FARMERS GRAIN, LLC,<br><br>　　　　　Debtor. | Case No. 17-00450-TLM<br>Chapter 7 |
| NOAH G. HILLEN, Trustee,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>PETERSON FARMS OF NYSSA, INC.,<br><br>　　　　　Defendant. | Adversary No. 19-06015-TLM |

**MEMORANDUM IN OPPOSITION TO TRUSTEE'S MOTIONS FOR SUMMARY JUDGMENT**

　　　　　COMES NOW Defendant Peterson Farms of Nyssa, Inc. ("Defendant"), by and through its counsel of record, Givens Pursley LLP, and hereby submits this Memorandum in Opposition to Trustee's Motions for Summary Judgment.

**MEMORANDUM IN OPPOSITION TO TRUSTEE'S
MOTIONS FOR SUMMARY JUDGMENT - 1**

14985988.1

### I.    INTRODUCTION

Defendant and the Plaintiff, Chapter 7 Trustee Noah G. Hillen ("Trustee"), have filed cross summary judgment motions seeking a determination on whether a check paid to Defendant in the spring of 2017 for wheat delivered in July of 2016 ("Wheat") constitutes an avoidable preference. Based on the parties' submissions, there is no dispute as to when the Wheat was delivered and the critical documents evidencing the deliveries. Additionally, there is no dispute as to when payment for the Wheat occurred and the documents evidencing the payment. The dispute lies in the nature of the transaction concerning the Wheat.

Defendant asserts that it delivered the Wheat for storage, and did not sell the Wheat until Defendant instructed Farmers Grain, LLC ("Farmers Grain") to sell the Wheat on February 17, 2017, based on the commodity price of the day. The Trustee, on the other hand, asserts that the sale occurred when the Wheat was delivered in 2016. However, the Trustee has produced no contract related to the Wheat providing for deferred payment and pricing. And, the Trustee has provided only general testimony concerning Farmers Grain's historical business practices with certain farmers; the Trustee has provided no testimony related to the parties' arrangement as to *this* Defendant and the transaction related to *this* Wheat.

Based on the record, the Court should find that Defendant delivered the Wheat for storage at Farmers Grain, where it was stored until the Defendant ordered the sale on February 17, 2017. Throughout that period of time the Wheat was the property of Defendant, not property of the Estate. Additionally, if the Wheat became the property of the Estate, it was not until the date of sale on February 17, 2017. That is the date of any sales transaction for the Wheat and the date that Defendant's statutory lien attached, if ever. Even if the parties had a creditor-debtor relationship as a result of the sale on February 17, 2017, Defendant had a statutory lien at the time

payment was made, which lien defeats this preference action. Further, the payment was made in the parties' ordinary course of business, and was a contemporaneous exchange for new value. The Court should deny the Trustee's summary judgment motion.

## II.   STATEMENT OF FACTS

1.   On January 7, 2020, Defendant filed its own Motion for Summary Judgment (CR 22), which was supported by the Memorandum in Support (CR 23) ("Defendant Memorandum"), the Statement of Undisputed Material Facts (CR 24) ("Defendant Facts"), the Declaration of Randall A. Peterman (CR 25) ("Peterman Dec."), the Declaration of Robert Peterson (CR 26) ("Defendant Dec."), and Declaration of Chester Millsap (CR 27) ("Millsap Dec."). For purposes of brevity, Defendant incorporates those documents herein by reference. Those incorporated documents include the applicable standards for summary judgment, both as to the facts and the law.

2.   On January 15, 2020, the Trustee filed combination Motions for Summary Judgment (CR 29) ("Trustee Motion") applicable to multiple defendant farmers, all of whom are represented by undersigned counsel. In support, the Trustee filed a Memorandum in Support (CR 30) ("Trustee Memorandum"), Statement of Undisputed Facts (CR 31) ("Trustee Facts"), Declaration of Trustee (CR 32) ("Trustee Dec."), and Declaration of Chester Millsap (CR 33) ("Trustee Millsap Dec.").

3.   Concurrent with this opposition brief, Defendant is filing its Statement of Disputed and Undisputed Material Facts in Opposition to Trustee's Motions for Summary Judgment ("Opposition to Trustee Facts"). Defendant incorporates the Opposition to Trustee Facts herein by reference.

### III. ARGUMENT

**A. The parties do not dispute that Defendant delivered the Wheat to Farmers Grain in July of 2016, and that Farmers Grain issued payment for the Wheat in spring of 2017 within the preference period.**

Based on the Defendant Facts and the Trustee Facts, it is undisputed that:

- On multiple dates in July of 2016, Defendant delivered 1,524.88 tons of Soft White Wheat to Farmers Grain (previously defined as the "Wheat"). Defendant Facts, ¶¶ 11-20; Trustee Facts, ¶ 12.[1]

- Deliveries of the Wheat were documented by individual Scale Tickets ("Scale Tickets"), and ultimately were aggregated in the Final Scale Ticket Settlement Statement ("Final Settlement Statement"). Defendant Facts, ¶¶ 11, 18-20; Trustee Facts, ¶¶ 12-13.

- Farmers Grain did not pay Defendant for the Wheat at the time of delivery of the Wheat in July of 2016. Rather, on February 17, 2017, Farmers Grain issued a check in the amount of $167,584.32 to Defendant for the Wheat (the "Wheat Check"). Defendant Facts, ¶ 23; Trustee Facts, ¶ 13.

- The Wheat Check was paid from and cleared Farmers Grain's bank account within 90 days of the petition date. Peterman Dec., Ex. A; Trustee Facts, ¶ 14.

Thus, there is no dispute as to when the Wheat was delivered and the associated documentation. There is also no dispute as to when payment for the Wheat occurred and the associated documentation. The parties, however, dispute the nature of the transaction concerning the Wheat.

**B. The Trustee asserts that the Wheat was sold by Defendant to Farmers Grain in July of 2016 but presents no supporting evidence.**

It is critical to examine not only the argument, but the actual evidence submitted by the Trustee in support of the instant motion. The only factual records submitted to support the

---

[1] The Trustee identified the tonnage at 1,525.88 tons, but this was presumably a typographical error. Defendant doubts there is a dispute of fact on this issue, given the documentation.

**MEMORANDUM IN OPPOSITION TO TRUSTEE'S
MOTIONS FOR SUMMARY JUDGMENT - 4**                                        14985988.1

Trustee Motion are the Trustee Dec. and the Trustee Millsap Dec. The only preference element established by the Trustee Dec. is that payment was made within the preference period. *See* Opposition to Trustee Facts, ¶ 14. But, no submitted facts establish any written contract for sale between Farmers Grain and Defendant for the Wheat.

For instance, in support of the argument that the Wheat Check was transferred for the benefit of Defendant as a creditor, the Trustee argues as follows:

> Farmers Grain understood that after deliveries of the SWW in July 2016, it had to pay Defendants for the wheat, although the time of payment was deferred, and the price was yet to be determined by the market on that future date. (Plaintiff's Declaration of Millsap ¶¶ 5 & 6.) Therefore, after delivery, Defendants were creditors holding a claim for the delivered SWW, albeit unliquidated and undefined. In addition, the title to the SWW passed to Farmers Grain at delivery and it owed an obligation for the SWW.

Trustee Memorandum, pp. 5-6. These asserted facts support the Trustee's argument that under the UCC, title of goods passes to buyer upon delivery of the goods. Trustee Memorandum, p. 6.

Paragraphs 5 and 6 of the Trustee Millsap Dec. do not support the stated proposition. Instead, Mr. Millsap provides general information related to "some farmers" who are unidentified and who did business with Farmers Grain in "July" of a given year:

**MEMORANDUM IN OPPOSITION TO TRUSTEE'S
MOTIONS FOR SUMMARY JUDGMENT - 5**

> 5. It was my understanding, that each delivery to Farmers Grain of SWW or Corn had to be paid for to the farmer at some time after the deliveries were made. Farmers Grain did not issue warehouse receipts to farmers in exchange for deliveries of SWW or other grain. No farmer ever came back and picked up previously delivered grain.
>
> 6. Some farmers delivering SWW in July of the year chose to be paid shortly after delivery. Some farmers signed a Wheat Contract in advance of harvest documenting an "oral agreement to buy and sell" selecting a future date and set price to be paid usually in September following the July harvest. Some farmers delivering SWW in July of the year, chose to not agree to any date for payment or price, but were allowed to defer receipt of payment to a future date of their choosing, upon which date a fluctuating market price would be quoted and paid. Very few farmers waited until the spring of the following year to be paid for their SWW delivered in July of the previous year.

Trustee Millsap Dec., ¶¶ 5-6.

Notably, this testimony does not mention this Defendant, the particular Wheat at issue in this adversary action, or even the harvest year at issue—2016. Thus, this testimony is largely irrelevant to the determination of what the agreement was between the parties with respect to the Wheat and Wheat Check at issue here. The Trustee therefore asserts and concludes there was a contract under which Defendant sold the Wheat under a deferred pricing and payment arrangement, but does not present evidence of that fact. This unsupported conclusion then permeates the Trustee's entire summary judgment argument.

Tellingly, the Trustee cites to O.R.S. § 72.4010(2) to support the argument that title passes upon delivery, without first examining the beginning of the statute, which provides in relevant part:

**MEMORANDUM IN OPPOSITION TO TRUSTEE'S
MOTIONS FOR SUMMARY JUDGMENT - 6**

14985988.1

> ***Each provision of this chapter*** with regard to the rights, obligations and remedies of the seller, the buyer, purchasers or other third parties ***applies irrespective of title*** to the goods except where the provision refers to such title. In so far as situations are not covered by the other provisions of this chapter and matters concerning title become material the following rules apply:
>
> (1) ***Title to goods cannot pass under a contract for sale prior to their identification to the contract*** as provided in ORS 72.5010 (Insurable interest in goods), and unless otherwise explicitly agreed the buyer acquires by their identification a special property as limited by the Uniform Commercial Code. Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest. Subject to these provisions and to the provisions of ORS chapter 79 on secured transactions, title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.
>
> (2) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place . . . .

O.R.S. § 72.4010(1)-(2) (emphasis added); *see also* O.R.S. § 72.1060 (defining a "contract for sale").

The Trustee has simply not shown that a contract for sale existed with respect to the Wheat, and meeting the requirements of a contract for sale, under the applicable UCC provisions. *See* O.R.S. § 77.5090 ("Whether a document of title is adequate to fulfill the obligations of a contract for sale, a contract for lease or the conditions of a letter of credit is determined by ORS chapter 72, 72A or 75."); *see also* O.R.S. § 72.2010(1) ("… a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by the authorized agent or broker of the party.").

**MEMORANDUM IN OPPOSITION TO TRUSTEE'S
MOTIONS FOR SUMMARY JUDGMENT - 7**                                                14985988.1

Similarly, in support of the argument that the transfer to Defendant was on account of an antecedent debt, the Trustee states:

> The spring 2017 checks by Famers [sic] Grain to the Defendants were on account of antecedent debts owed by Farmers Grain. Title to the SWW had passed from the Defendants to Farmers Grain when the SWW was delivered to Farmers Grain in July and August of 2016. Because the Defendants did not receive payment upon delivery, the Defendants had a claim to demand payment from Farmers Grain on a future date. After the SWW deliveries, the parties were in a debtor/creditor relationship. In the spring of 2017, and more than six months after title to each of the SWW deliveries had transferred, Farmers Grain settled its antecedent obligation by issuing checks to the Defendants. (Declaration of Hillen, Exhibits 1-5.)

Trustee Memorandum, pp. 6-7.

The only proposition the Trustee Dec. supports in the referenced exhibits is that the Wheat Check was paid to Defendant. The Trustee submits no evidence regarding the agreement between the parties with respect to the Wheat or the Wheat Check. Instead, the Trustee again presumes that title to the Wheat passed to Farmers Grain at the time of delivery without providing evidence of a sales contract and associated contract terms.

The Trustee has simply not established there was a contract of sale for the Wheat with deferred pricing and payment terms such that title to the Wheat could have passed to Farmers Grain at the time of delivery in July of 2016.

> C. **The record demonstrates that Defendant stored the Wheat with Farmers Grain until the Wheat was sold in spring of 2017.**

In contrast to the general Farmers Grain practices set forth by the Trustee in the Trustee Facts, Trustee Dec., and Trustee Millsap Dec., Defendant has submitted evidence concerning the actual transaction at issue in this case, including the applicable warehouse receipts. The following is a synopsis of the key facts supporting a conclusion that Farmers Grain stored the

**MEMORANDUM IN OPPOSITION TO TRUSTEE'S**
**MOTIONS FOR SUMMARY JUDGMENT - 8**                                              14985988.1

Wheat until Defendant gave Farmers Grain the order to sell:

- Defendant delivered the Wheat to Farmers Grain for storage in July of 2016, but was not paid for the Wheat in 2016;

- Defendant ordered the sale of the Wheat on February 17, 2017, after being told the market price for the Wheat by Farmers Grain;

- Right after Defendant ordered the sale, Farmers Grain paid Defendant for the Wheat, after deducting "storage / serv" costs totaling $7,776.88.

- The storage and later sale of the Wheat followed the same procedure typically followed by the parties.

Defendant Facts, ¶¶ 11-29. The Trustee has not explained what the "storage / serv" deduction was for if not for storage charges. The Trustee has not disputed these facts in a manner sufficient to justify summary judgment in the Trustee's favor.

Based on these facts, Defendant and Farmers Grain had a statutory bailment relationship up until the point the sale order was given, with Defendant acting as bailor and Farmers Grain acting as bailee. *See* Defendant Memorandum, pp. 12-18. Because the Trustee has not sufficiently proven the premise that the Wheat was property of the estate, the Trustee's analysis is simply incorrect. The only party which held a lien right in the Wheat, which was property of the Defendant, was Farmers Grain by virtue of O.R.S. § 77.2090(1). The Defendant did not hold a lien in its own Wheat which it properly owned until the time of sale.

Additionally, the Wheat Check was not made on account of an antecedent debt because it was made contemporaneously with the sale of the Wheat. *See* Defendant Memorandum, pp. 18-19. The Wheat was delivered to Farmers Grain for storage in July of 2016 but the sale did not occur until February 17, 2017.

**MEMORANDUM IN OPPOSITION TO TRUSTEE'S**
**MOTIONS FOR SUMMARY JUDGMENT - 9**

14985988.1

> **D.**   **If the Wheat became property of the estate at the time of sale on February 17, 2017, Defendant became a secured creditor at that time by virtue of the Oregon grain producer's lien, which defeats the Trustee's preference action.**

The Trustee argues that Defendant was not secured when the Wheat Check was paid. Trustee Memorandum, pp. 7-10. The Trustee makes two arguments on this point.

First, the Trustee again argues that under O.R.S. § 72.401(2), title to the Wheat passed at the time of delivery. Trustee Memorandum, p. 8. However, that argument presumes there was a contract for sale in place that met the UCC requirements, because "[t]itle to goods cannot pass under a contract for sale prior to their identification to the contract . . . ." O.R.S. § 72.401(1). This argument fails because, as discussed above, the parties did not have a prior contract for the sale of the Wheat. They had a storage relationship.

Second, the Trustee argues that the Oregon grain producer's lien attached at the time the Wheat was delivered to Farmers Grain in July of 2016. This is based on the Trustee's position that the sale of the Wheat occurred at that time. According to the Trustee, because the Wheat was delivered to a "purchaser" in July of 2016, the 180-day automatic lien expired in January of 2017—prior to the sale of the Wheat. Trustee Memorandum, pp. 9-10.

Defendant has set forth the relevant provisions of the grain producer's lien statute as such provisions relate to Defendant, and which apply only if the Court finds that the Wheat became property of the estate. *See* Defendant Memorandum, pp. 19-20. In the event the statute applies, the parties agree on the applicable provisions and do not dispute that the lien expires 180 days after the date the lien attaches if it is not extended by the filing of a notice of lien (*see* O.R.S. § 87.762(1)), and do not dispute that the lien applies to the Wheat at issue (*see* O.R.S 87.750(2)).

The parties, however, disagree on the date of lien attachment. O.R.S. § 87.755 provides:

**MEMORANDUM IN OPPOSITION TO TRUSTEE'S
MOTIONS FOR SUMMARY JUDGMENT - 10**

> (1) An agricultural producer that delivers or transfers grain *for consideration* has a lien on the inventory of the *purchaser* and proceeds received by the *purchaser* from the selling of the inventory.
>
> (2) The lien created by subsection (1) of this section attaches to the inventory and proceeds *on the date physical possession of the grain is delivered or transferred by the agricultural producer to the purchaser or an agent of the purchaser*. If grain is delivered or transferred by an agricultural producer to a person other than the purchaser for cleaning or storage, *the lien attaches when the grain is physically delivered or transferred to the purchaser or an agent of the purchaser for agreed consideration*.

O.R.S. § 87.755(1)-(2) (emphasis added).

With respect to subsection (1), the statutory lien arises when the grain is delivered or transferred "for consideration" to the "purchaser." Similarly, under subsection (2), the lien attaches when the grain is delivered or transferred to the "purchaser" or "agent of the purchaser." And, when the grain is delivered or transferred to a person other than the purchaser for cleaning or storage, attachment occurs "when the grain is physically delivered or transferred to the *purchaser* or an agent of the *purchaser* for *agreed consideration*." O.R.S. § 87.755(2) (emphasis added).

The Trustee argues that there was consideration at the time of delivery based on the following:

> In the present case, Farmers Grain knew it was the purchaser of the SWW at the time of deliveries because it had to pay for the SWW at a future date. That obligation was the consideration. In fact, the deliveries of SWW were not stored, but immediately began to be re-sold by Farmers Grain to buyers in the Tri-Cities area. (Plaintiff's Declaration of Millsap, ¶¶ 5-6; Declaration of Hillen, Exhibit 8.)

Trustee Memorandum, p. 10.

Once again the Trustee relies on paragraphs 5 and 6 of the Trustee Millsap Dec., which do not apply to this Defendant, this Wheat, or even specifically the 2016 crop year. Paragraphs 5 and 6 say nothing about Farmers Grain's agreement to defer payment and pricing

**MEMORANDUM IN OPPOSITION TO TRUSTEE'S
MOTIONS FOR SUMMARY JUDGMENT - 11**

14985988.1

with respect to Defendant or the Wheat at issue. Instead, the testimony relates generally to the typical July wheat harvest and Farmers Grain's arrangements with "some farmers" who delivered and sold grain in various (unidentified) years.

The Trustee also relies on Exhibit 8 to the Trustee Dec., which are identified as excerpts of a "Shipment Listing by Commodity Report" related to shipments of SWW from Farmers Grain to other entities in 2015 and 2016. A review of Exhibit 8 appears to show that Farmers Grain sold wheat in 2015 and 2016. The document does nothing to resolve the question of when Defendant's grain producer's lien attached.

Simply put, the Trustee submits no evidence of a deferred pricing and payment arrangement with Defendant for the Wheat in 2016, which could support an argument that title passed—and that the lien attached—in July of 2016. Absent such evidence, and in the face of Defendant's specific evidence with respect to the storage, and later sale, of the Wheat at issue, the Court should find that the lien attached at the time of sale on February 17, 2017. The lien was still in effect when the Wheat Check was paid, and thus the Trustee's preference action must fail.[2]

### E. The Trustee submitted certain evidence which should be disregarded as irrelevant because it is not tied to any legal argument.

The Trustee submitted certain facts in the Trustee Millsap Dec. and Trustee Dec. which are not referenced or relied upon in the Trustee Facts or the Trustee Memorandum. For instance, paragraph 8 of the Trustee Millsap Dec. discusses Mr. Millsap's understanding with respect to Farmers Grain's warehouse licensure. The Trustee does the same in paragraph 14 of the Trustee Dec. However, the licensure issue is not otherwise raised by the Trustee. However, the

---

[2] The Trustee's action also fails because the Wheat Check was paid in the parties' ordinary course of business and because it constituted a contemporaneous exchange for new value. *See* Defendant Memorandum, pp. 21-25.

**MEMORANDUM IN OPPOSITION TO TRUSTEE'S
MOTIONS FOR SUMMARY JUDGMENT - 12**

14985988.1

issue of licensure is irrelevant to the Chapter 77 analysis set forth in the Defendant Memorandum, which applies to a "warehouse" regardless of licensure. "Warehouse" is defined under O.R.S. § 77.1020(L) as "a person engaged in the business of storing goods for hire." And, Chapter 77 applies even in the face of certain irregularities and conduct of the issuer of a warehouse receipt:

> The obligations imposed by this chapter on an issuer apply to a document of title even if:
>
> (1) The document does not comply with the requirements of this chapter or of any other statute, rule or regulation regarding its issuance, form or content;
> (2) The issuer violated laws regulating the conduct of its business;
> (3) The goods covered by the document were owned by the bailee when the document was issued; or
> (4) The person issuing the document is not a warehouse but the document purports to be a warehouse receipt.

O.R.S. § 77.4010.[3] Accordingly, the statements submitted by the Trustee are inapposite to the issue before the Court.

Similarly, Exhibits 6 and 7 to the Trustee Dec. contain a number of contracts that do not at all relate to the Wheat at issue, yet are included anyway. Those same contracts are not otherwise referenced by the Trustee in the moving papers. Exhibit 6 contains numerous contracts for the *purchase* of wheat in 2016—the year in which the Defendant here delivered the *Wheat for*

---

[3] As further explained in the official comment to the statute:

> [A] bailee will not be permitted to avoid his obligation to deliver the goods (Section 7-403) or his obligation of due care with respect to them (Sections 7-204 and 7-309) by taking the position that no valid "document" was issued because he failed to file a statutory bond or did not pay stamp taxes or did not disclose the place of storage in the document.

O.R.S. § 77.4010, cmt.

**MEMORANDUM IN OPPOSITION TO TRUSTEE'S
MOTIONS FOR SUMMARY JUDGMENT - 13**                                              14985988.1

*storage* to Farmers Grain.[4] Absolutely none of them deal with the *stored Wheat* delivered by the Defendant to Farmers Grain. Similarly, Exhibit 7 contains numerous contracts for the *purchase* of wheat in 2015—an irrelevant crop year.

Finally, the Trustee Millsap Dec., at paragraph 3, states that Farmers Grain's wheat was commingled. Again, the Trustee does not explain the relevance of this information, and this asserted fact is irrelevant under applicable law. *See* O.R.S. § 77.2070 ("Unless the warehouse receipt provides otherwise, a warehouse shall keep separate the goods covered by each receipt so as to permit at all times identification and delivery of those goods. *However, different lots of fungible goods may be commingled*.") (emphasis added).

In the end, the relevance of this information to the Trustee's motion is not identified anywhere. Defendant submits that because there is no discussion of the relevance of this evidence and other evidence not addressed by the Trustee, meaning Defendant cannot fairly respond to it, the Court should disregard the evidence as irrelevant to the instant motion. *See* F.R.C.P. 56(c)(1)(A) (moving party must cite to "particular parts of materials in the record"); F.R.C.P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); *see also Castrejon v. Sniff*, No. EDCV1301254DOCAJW, 2017 WL 2469974, at *2

---

[4] The wheat contracts each contain a contract month, a contract number, a date, the price per ton, and the quantity of wheat delivered. The wheat contracts state:

> **This contract confirms the parties oral agreement to buy and sell. The statement above and below are understood to be an accurate statement of the terms and conditions of the agreement between the parties hereto. Failure to advise buyer immediately in writing of any discrepancies, objections to or disagreement with such terms and conditions shall be construed as an acceptance of this contract.**

*See, e.g.*, Trustee Dec., Ex. 6 at FG30011 (emphasis added).

**MEMORANDUM IN OPPOSITION TO TRUSTEE'S
MOTIONS FOR SUMMARY JUDGMENT - 14**

14985988.1

(C.D. Cal. May 31, 2017), *report and recommendation adopted*, No. EDCV131254DOCAJW, 2017 WL 2468776 (C.D. Cal. June 5, 2017) (collecting cases) (explaining that the district court is not required to search the record for evidence supporting a party's position).

## IV.    CONCLUSION

For the reasons stated herein, Defendant respectfully requests that the Court deny the Trustee's Motions for Summary Judgment with respect to the motion against Defendant.

DATED this 29th day of January, 2020.

                                                                                           GIVENS PURSLEY LLP


By  */s/ Randall A. Peterman*
    Randall A. Peterman – Of the Firm
    Melodie A. McQuade – Of the Firm
    Attorneys for Defendant

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on the 29th day of January, 2020, I filed the foregoing **MEMORANDUM IN OPPOSITION TO TRUSTEE'S MOTIONS FOR SUMMARY JUDGMENT** electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

**Jed W. Manwaring**
jmanwaring@evanskeane.com
valerie@evanskeane.com


                                             */s/ Randall A. Peterman*
                                             Randall A. Peterman